UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No.: 1:22-cr-033 |
| | ) | |
| CHARLES SNEAD, | ) | By: Michael F. Urbanski |
| Defendant. | ) | Chief United States |
| | ) | District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Charles Snead's ("Snead") motion to dismiss Count III of the Indictment as Unconstitutional. ECF No. 32. The indictment, ECF No. 24, charges Snead with (1) knowingly conspiring with others to possess with the intent to distribute 50 grams of methamphetamine, its salts, isomers, and salts of its isomers in violation of Title 21, United States Code §§ 846 and 841(b)(1)(A); (2) knowingly and intentionally possessing with the intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code § 841(a)(1) and 841(b)(1)(A); and (3) knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, § 924(c). Snead argues that Count III, knowing possession of a firearm in furtherance of a drug trafficking crime, is unconstitutional following the United States Supreme Court's recent opinion in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).

Bruen, and the cases it follows, are focused on protecting the Second Amendment rights of law-abiding citizens, and, as such, do not invalidate laws prohibiting criminal conduct, such as the one at issue here, which prohibits possession of a firearm in furtherance of a drug

trafficking crime. In short, the Second Amendment does not guarantee a person the right to use or carry a firearm while engaged in criminal activity. As further explained in this opinion, Snead's motion to dismiss Count III is **DENIED**.

## I.

A criminal complaint was filed in the United States District Court for the Western District of Virginia on July 21, 2022. ECF No. 1. In that complaint, Special Agent Brian Snedeker averred that Snead violated (1) 21 U.S.C. § 841 (a)(1) and § 841(b)(1)(B)(viii) and (2) 18 U.S.C. § 924(c). This criminal complaint was supported by an affidavit and list of facts submitted by Special Agent Snedeker. According to Special Agent Snedeker, a federal search warrant was executed on Charles Snead's residence in Abingdon on July 20, 2022. ECF No. 1 at 2. Upon execution of the search warrant, approximately 112 grams of a crystalline substance (later tested using a chemical test kit returning results positive for methamphetamine) were found in a lock box containing three boxes of 9mm ammunition, digital scales, and Ziploc-type bags. Id. A loaded Makarov 9mm handgun was also found in the residence in a couch located less than three feet from the lock box containing the drugs and paraphernalia. Id.

Snead was detained and read his Miranda rights later that day. He admitted to law enforcement that he had distributed methamphetamine and possessed roughly a quarter pound of methamphetamine and a handgun at his residence. Id. at 3.

On August 16, 2022, a Grand Jury returned a three-count indictment against Snead. ECF No. 24. The indictment included violations of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A) in Count I, violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) in Count II, and violation of 18 U.S.C. § 924(c) in Count III. Snead's motion to dismiss challenges the

constitutionality of Count III. The parties fully briefed the issue and the court decided to dispense with receiving oral argument because the facts and legal contentions are adequately presented in the materials before it and argument would not aid the decisional process. See ECF Nos. 32, 40, 41.

## II.

Under Federal Rule of Criminal Procedure 12, the Court should dismiss criminal charges in an indictment "where there is an infirmity of law in the prosecution[,]" such as an unconstitutional statute. United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012).

The Second Amendment to the United States Constitution provides "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In Bruen, the Supreme Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. Only after the government makes that showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." Id. at 2130 (internal quotation marks omitted).

Snead's challenge fails because the text of the Second Amendment does not cover the criminal use of firearms. As such, the conduct made unlawful by § 924(c), possession of a firearm in furtherance of a drug trafficking crime, is not protected by the Second Amendment.

As the Supreme Court has repeatedly emphasized, the Second Amendment protects firearm possession and use by law-abiding citizens.

In <u>District of Columbia v. Heller</u>, 554 U.S. 570, 630 (2008), the Court stated that "[w]e described the right protected by the Second Amendment as bearing arms for a lawful purpose." Focusing on the "core lawful purpose of self-defense," <u>id.</u> at 630, <u>Heller</u> teaches that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." <u>Id.</u> at 625. The Court explained that "[l]ike most rights, the right secured by the Second Amendment is not unlimited," <u>id.</u> at 626, and that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." <u>Id.</u> Importantly, the Court stated:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

<u>Id.</u> at 626–27. In an accompanying footnote, the Court stated that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."[1] <u>Id.</u> at 627 n.26. In short, <u>Heller</u> makes clear that the Second Amendment protects the right to keep and bear arms for lawful purposes, and provides no support for Snead's argument that the Second Amendment precludes legislatures from enacting laws prohibiting the illegal use of firearms.

---

[1] While the <u>Heller</u> Court did not mention statutes prohibiting the commission of crimes while using firearms, such as § 924(c), its rationale applies with even greater force in such contexts.

McDonald v. City of Chicago, 561 U.S. 742, 780 (2010), decided two years later, reiterated the "central holding in Heller: that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." The Court again noted the scope of its decision:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever and for whatever purpose." We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws on the commercial sale of arms." We repeat those assurances here.

Id. at 786 (internal citations omitted).

Following Heller and McDonald, a number of federal circuits rejected Second Amendment challenges to § 924(c). In United States v. Jackson, 555 F.3d 635, 636 (7th Cir. 2009), the Seventh Circuit reasoned: "The Court said in Heller that the Constitution entitles citizens to keep and bear arms for the purpose of *lawful* self-protection, not for *all* self-protection. . . . The Constitution does not give anyone the right to be armed while committing a felony . . . . [T]here is no constitutional problem with separating guns from drugs." In United States v. Potter, 630 F.3d 1260, 1261 (9th Cir. 2011), the Ninth Circuit stated: "Both implicitly and explicitly, the Court made clear that its holding concerned the *lawful* possession and use of a firearm. Although the courts undoubtedly will continue to develop the full scope of the rights conferred by the Second Amendment, it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*." The Second

Circuit in <u>United States v. Bryant</u>, 711 F.3d 364, 370 (2d Cir. 2013), reached the same conclusion:

> [W]e hold that the Second Amendment does not protect the unlawful purpose of possessing a firearm in furtherance of a drug trafficking crime and that 18 U.S.C. § 924(c) as applied in this case does not violate the Second Amendment. . . . [O]nce [the defendant] engaged in an illegal home business, he was no longer a law-abiding citizen using the firearm for a lawful purpose, and his conviction for possession of a firearm under these circumstances does not burden his Second Amendment right to bear arms.

<u>Id.</u> (internal quotations and citations omitted). In <u>United States v. Napolitan</u>, 762 F.3d 297, 311 (3rd Cir. 2014), the Third Circuit agreed: "Needless to say, while the Second Amendment secures 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home,' <u>District of Columbia v. Heller</u>, 554 U.S. 570, 635 (2008), it does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits. . . ." In an unpublished opinion decided prior to <u>Heller</u>, the Fourth Circuit reached the same conclusion:

> In his third challenge to his conviction, Farmer claims that § 924(c) is unconstitutional because it violates the Second Amendment of the Constitution. Section 924(c) does not prohibit people from keeping and bearing firearms; rather it criminalizes the use of a firearm during a drug offense. Consequently, it does not run afoul of the constitutional provisions in the Second Amendment; this claim is meritless.

<u>United States v. Farmer</u>, 1 F.3d 1234 (table), 1993 WL 310285, at *1 (4th Cir. Aug. 17, 1993).

The Supreme Court's recent decision in <u>Bruen</u> does not breathe life into Snead's argument. In fact, the Court expressly stated that <u>Bruen</u> was "consistent with <u>Heller</u> and <u>McDonald</u>." 142 S.Ct at 2162. As in <u>Heller</u> and <u>McDonald</u>, the issue in <u>Bruen</u> concerned "how and why the regulations burden a law-abiding citizen's right to armed self-defense." <u>Id.</u> at

2133. The Court noted that it was undisputed that the petitioners were "two ordinary law-abiding, adult citizens" who are "part of 'the people' whom the Second Amendment protects." Id. at 2134. In the first paragraph of the Bruen opinion, the Court framed the issue as follows:

> In District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. Chicago, 561 U.S. 742 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to posses a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for self-defense. We too agree, and now hold, consistent with Heller and McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

Id. at 2122.

In the concluding paragraph of the majority opinion, the Court repeated that the right to bear and keep arms belonged to "law-abiding citizens with ordinary self-defense needs." Id. at 2156. Nothing in the text of Bruen suggests that the Second Amendment protects the use of a firearm in the commission of a crime. This conclusion is confirmed by the concurring opinion of Justice Kavanaugh, joined in by Chief Justice Roberts.  The concurrence echoes Heller's and McDonald's assurances that "[n]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

Following this summer's decision in Bruen, a number of district courts have addressed challenges to federal criminal firearms statutes. In the majority of those cases, the courts have rejected those challenges. For example, in United States v. Ingram, No. CR 0:18-557-MGL-3, 2022 WL 3691350 (D. S.C. Aug. 25, 2022), the South Carolina District Court recently considered a challenge to both 924(c), at issue here, and 18 U.S.C. § 922(g), prohibiting

7

convicted felons from possessing firearms. The court in <u>Ingram</u> noted that "<u>Bruen</u> clarified and 'reiterated[,]' rather than modified, the constitutional ruling in <u>Heller</u>, in the face of lower court rulings that failed to comport with its intended holding." <u>Id.</u> at *2. The district court discussed the analytical framework for addressing Second Amendment issues and noted that <u>Bruen</u> shrunk the older two-part analysis into a single step requiring that "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." <u>Id.</u> at *2 (quoting <u>Bruen</u>, 142 S. Ct. at 2127). The <u>Ingram</u> court concluded:

> To recap, similar discussion regarding felon-in-possession and comparable statutes appears in three different opinions: <u>Heller</u>, <u>McDonald</u>, and <u>Bruen</u>. By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in <u>Heller</u> and <u>McDonald</u> clarifies the bounds of the plain text of the Second Amendment. This, coupled with the majority's focus in <u>Bruen</u> on the Second Amendment rights of "law-abiding citizens" throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights.
>
> *     *     *
>
> And, although the Supreme Court cases explained above fail to explicitly mention Section 924(c), the rationale also applies to that statute in equal or greater measure. <u>Heller</u> and its progeny emphasize that the enumerated list "presumptively lawful" regulatory measures is inexhaustive. <u>Heller</u>, 554 U.S. at 627 n.26. Therefore, because it prohibits the use of firearms by non-law-abiding citizens for unlawful purposes, such conduct is also unprotected by the Second Amendment.

<u>Ingram</u>, 2022 WL 3691350, at *3.[2]

---

[2] As the <u>Ingram</u> court noted, "[t]o be sure, the language in <u>Heller</u> and <u>McDonald</u> to which Justice Kavanaugh cites is merely dicta. And, Kavanaugh's concurrence is merely persuasive. But, although this Court is 'not bound by dicta or separate opinions of the Supreme Court[,]' <u>Myers v. Loudon Cnty. Pub. Sch.</u>, 418 F.3d 395, 406 (4th Cir. 2005), it should 'give great weight to Supreme Court dicta,' <u>N.L.R.B. v. Bluefield Hosp. Co., LLC</u>, 821 F.3d 534, 541 n.6 (4th Cir. 2016)." <u>Ingram</u>, 2022 WL 3691350, at *2.

Snead's argument ignores the significant difference between the Supreme Court's opinions in <u>Heller</u>, <u>McDonald</u>, and <u>Bruen</u>, involving restrictions on the Second Amendment rights of law-abiding citizens, and the criminal conduct charged in this case. As <u>Ingram</u> notes, this trilogy of Supreme Court cases makes clear that the Second Amendment protects the conduct of law-abiding citizens, and provides no constitutional sanctuary for those who use firearms to commit crimes. <u>Bruen</u> and its predecessors focus on protecting the Second Amendment rights of "law-abiding citizens." Snead, in contrast, is charged with possession of a firearm in furtherance of a drug trafficking crime. Plainly, the illegal context of Snead's alleged possession takes this case outside of the ambit of <u>Bruen</u>.[3]

This conclusion is consistent with other cases decided by federal district courts around the country following <u>Bruen</u>. <u>See</u> <u>United States v. Nutter</u>, No. 2:21-CR-00142, 2022 WL 3718518 (S.D. W.Va. Aug. 29, 2022) (addressing 18 U.S.C. § 922(g)(9)) ("Nothing in the historical record suggests a popular understanding of the Second Amendment at the time of the founding that extended to preserving gun rights for groups who pose a particular risk of using firearms against innocent people."); <u>United States v. Daniels</u>, No. 1:22-CR-58-LG-RHWR-1, 2022 WL 2654232, at *4 (S.D. Miss. July 8, 2022) (addressing 18 U.S.C. § 922(g)(3)) ("The Court therefore finds that 18 U.S.C. § 922(g)(3) passes constitutional muster under the legal framework articulated in <u>Heller</u> and <u>Bruen</u>."); <u>United States v. Perez-Garcia</u>, No. 3:22-CR-01581-GPC, 2022 WL 4351967, at *1 (S.D. Cal. Sept. 18, 2022) (addressing 18 U.S.C.

---

[3] While Snead asserts that the gun was merely in the home for personal safety reasons unrelated to the methamphetamine, the court finds that the proximity of the gun, three feet from the lockbox holding the suspected methamphetamine, does not support this assertion. Further supporting the court's conclusion is the fact that the gun's ammunition was in the lockbox alongside the suspected methamphetamine.

§ 3142(c)(1)) ("Regulations limiting or prohibiting access to firearms by specific groups in the interest of public safety have been part of the Nation's historical tradition since the earliest days of our Nation's founding."); United States v. Burrell, No. 21-20395, 2022 WL 4096865, at *3 (S.D. Mich. Sept. 7, 2022) (addressing 18 U.S.C. § 922(g)(1)) ("Federal courts nationwide have rejected similar facial constitutional challenges to the felon-in-possession statute).

Against this backdrop, Snead's citation of United States v. Quiroz, 4:22-CR-00104-DC, ECF No. 82 (W.D. Tex. September 19, 2022) stands alone. Quiroz does not suggest a contrary result for two reasons. First, Quiroz did not concern § 924(c), but rather involved 18 U.S.C. § 922(n), concerning possession of a firearm by a person under felony indictment. Second, the court is not persuaded by the Quiroz court's back of the hand rejection of the dicta in Heller, McDonald, and Bruen. Instead, the court finds persuasive the opinion of the district court in Ingram, which, squarely addressing § 924(c), found it to be constitutional in a manner consistent with the Heller, McDonald, and Bruen decisions.

## III.

In sum, the Second Amendment does not protect the criminal use of firearms. Accordingly, Snead's motion to dismiss Count III of the indictment is **DENIED**.

An appropriate Order will be entered.

Entered:  October 28, 2022

Digitally signed by Michael F.
Urbanski      Chief U.S. District
Judge
Date: 2022.10.28 08:55:56 -04'00'

Michael F. Urbanski
Chief United States District Judge